UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | ) | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO.:  18 CR 10325-DJC |
| | ) | |
| v. | ) | |
| | ) | |
| KIMBERLY KITTS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

UNITED STATES' SENTENCING MEMORANDUM

The United States submits this memorandum in support of its recommendation that the defendant, Kimberly Kitts, be sentenced at the low end of the guideline range 101-121 months.

On November 19, 2018, Kitts waived indictment and pleaded guilty to an information charging her with one count of Investment Adviser Fraud in violation of 15 U.S.C. §§ 80b-6, 80b-17, four counts of wire fraud in violation of 18 U.S.C. § 1343 and one count of aggravated identity theft in violation of 18 U.S.C. § 1028A.

STATEMENT OF THE CONDUCT

Kimberly Kitts was an investment adviser who resided in Orleans, Massachusetts and worked at a financial services firm (the "Financial Services Firm") until she was terminated by the firm on or about November 15, 2017.  In addition to her employment with the Financial Service Firm, Kitts created and operated a purported financial consulting business under the name Marquis Consulting, LLC ("Marquis Consulting").  Kitts opened a bank account in the name of Marquis Consulting at a bank in Massachusetts ("Marquis Consulting Account").

Clients A, B and C were among the clients of the Financial Services Firm who fell victim to the fraud scheme set forth in this Information.  Kitts was their investment advisor.  Client A was a client of KITTS for approximately seven years.  Clients B and C are a retired couple who

were clients of KITTS for approximately 12 years. Client A has submitted a victim impact statement and two other victims have indicated that they are planning to attend the sentencing.

*The Scheme To Defraud*

Beginning at least in or about 2011, Kitts engaged in a scheme to misappropriate assets from her clients' variable annuity and brokerage accounts. As part of the scheme, Kitts directed the clients' assets to the Marquis Consulting Account that she controlled, and then used the money in the Marquis Consulting Account to pay her personal expenses. In so doing, Kitts—who falsely represented to several of her clients that, among other things, she was a Certified Public Accountant and held a Ph.D. in economics—exploited her fiduciary relationships with clients, made intentional misstatements to them and to others, and otherwise engaged in deceptive conduct to conceal her wrongdoing. In total, KITTS misappropriated approximately $3,085,939 from her clients at the Financial Services Firm.

*Misappropriation of Clients' Variable Annuity Funds*

Some of Kitts' advisory clients, including Clients B and C, held variable annuities. A variable annuity is a contract between an investor and an insurance company, pursuant to which the insurance company agrees to make periodic payments to the investor, beginning either immediately or at some future date. Between July 2011 and June 2013, Kitts made unauthorized withdrawals from the variable annuities of six of her advisory clients (collectively, "the Annuity Clients"), including Clients B and C. Kitts submitted withdrawal forms to two insurance companies on which she forged her clients' signatures and directed the funds to the Marquis Consulting Account for her personal use. In total, Kitts made at least 24 such unauthorized withdrawals of client funds totaling approximately $962,654.

*Misappropriation of Clients' Brokerage Account Funds*

From about June 2013 through 2017, Kitts began stealing money from the brokerage accounts of Clients A, B and C. In total, from in or about and between 2013 and 2017, Kitts made at least 56 unauthorized withdrawals, and thereby took approximately $2,014,887 from Client A's brokerage account.

By early 2017, after Client A's brokerage account was nearly depleted, Kitts began stealing from the brokerage account of Clients B and C. In May 2017, Kitts forged a request for a $125,000 check from the brokerage account of Clients B and C, payable to Marquis LLC and deposited this check into her Marquis Consulting Account for her own personal use.

*Withdrawing Money from Client B's Retirement Account*

In or about June 2017, Kitts advised Client B to move $200,000 from Client B's individual retirement account ("IRA") to the managed cash account she shared with Client C, purportedly in order to pay taxes. Kitts thereby tricked Client B into signing signature pages for IRA distributions, while concealing the directions for delivery of the funds. Unbeknownst to Clients B and C, Kitts directed the $200,000 distribution to the Marquis Consulting Account for her own personal use.

*Attempt to Cover-Up the Misappropriations*

In or about August 2017, the Financial Services Firm initiated an investigation of Kitts, and requested that Kitts provide monthly statements from her personal bank accounts and the Marquis Consulting Account. To hide the unauthorized withdrawals from Client A's brokerage account, Kitts altered the Marquis Consulting Account statements to disguise the source and amounts of the deposits into that account. In addition, Kitts falsely told the Financial Services Firm that Marquis, LLC was created by Client A and operated by Client A as a sole

proprietorship. In fact, Marquis, LLC, was a non-existent company. Kitts also created fake Schedule C tax forms for Marquis, LLC and emailed them to the Financial Services Firm.

In order to carry out her schemes, Kitts also thus knowingly used, without lawful authority, the names and brokerage account number of Clients B, a means of identification, during and in relation to the crime of wire fraud.

## GOVERNMENT'S POSITION ON GUIDELINES:

A.   <u>Guidelines Calculation</u>:

Kitts is criminal history category I. The total losses to clients from Kitts crimes' are $3,085,939. Kitts has not objected to this loss calculation, which was included in the draft Pre-Sentence Report.

The Pre-Sentence Report calculates the guidelines as follows, and the United States agrees with this calculation. The Defendant has not objected to the calculation other than to the enhancement for sophisticated means.

| | | |
|---|---|---|
| +7 | USSG § 2B1.1(a)(1): | One or more of Defendant's offenses of conviction has a statutory maximum term of imprisonment of 20 years or more. |
| +16 | USSG § 2B1.1(b)(1)(I): | Loss is more than $1.5 million but less than $3.5 million. |
| +2 | USSG § 2B1.1(b)(2)(A)(iii): | The offense resulted in substantial financial hardship to one or more victims, specifically at least Client A. |
| +2 | USSG § 2B1.1(b)(10)(C): | The offense involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means. |
| +4 | USSG § 2B1.1(b)(19)(A): | The offense involved a violation of securities law and, at the time of the offense, Defendant was an investment adviser, or a person associated with an investment adviser. |
| -3 | USSG § 3E1.1(a)-(b): | The Defendant has demonstrated acceptance of responsibility for the offense and timely notified authorities of her intention to enter a plea of guilty. |
| **28** | **Total Offense Level Counts 1-5 (78-97 months)** | |

Count 6 for aggravated identity theft adds a mandatory two years to that calculation, so the final guideline range of 102-121 months. The United States recommends a sentence at the low end of that range.

 B. <u>Sophisticated Means</u>:

The United States submits that the enhancement for sophisticated means pursuant to USSG § 2b1.1(b)(1)(C) is appropriate in this case because, among other things, the Defendant set up a fake company, created false tax documents (Schedule C's for Marquis Consulting), created altered Marquis Consulting Account statements to disguise the source and amount of deposits into that account, forged other documents and used her position as an investment advisory to cancel annuities and take the funds herself. The Application Note to USSG § 2B1.1(b)(1)(C) specifically provides that conduct such as "hiding assets or transactions, or both, through the use of fictitious entities, corporate shells …. ordinarily indicates sophisticated means." *Id*. Here, the defendant created a fictitious entity, Marquis Consulting, and used that entity as a fake investment vehicle while actually taking the money for herself. Kitts also used the Marquis Consulting entity to hide her theft from the Financial Services Firm with which Kitts was associated.

CONCLUSION

Kitts' crimes merit a significant term of incarceration. Not only did Kitts abuse her position to steal from her clients, it is clear, including from the letter submitted by Client A, that she also abused the personal trust and friendship of her victims. She went to great lengths to set up and carry out her scheme over several years, with many separate transactions and falsified documents to cover up her thefts. Nor is this a situation where the calculation of loss overstates the Defendant's intent or gain. Here, all of the money Kitts took from her victims went directly to Kitts and it appears she has used it all. She has wiped out the retirement accounts and

annuities of at least several of her victims.  For all of these reasons, the United States respectfully recommends that the Court sentence the Defendant to a sentence at the low end of the guideline range as calculated above.

        Respectfully submitted,

        ANDREW E. LELLING
        United States Attorney

By:   /s/ Sara Miron Bloom
      SARA MIRON BLOOM
      Assistant United States Attorneys
      John Joseph Moakley United States Courthouse
      1 Courthouse Way, Suite 9200
      Boston, MA 02210
      (617) 748-3265

Dated: March 13, 2019

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

        /s/ Sara Miron Bloom
        Assistant United States Attorney

Date: March 13, 2019